UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:17CV-00042-DW

THERESA ANN BARTOLOMEI                                  PLAINTIFF

VS.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security                               DEFENDANT

## MEMORANDUM OPINION AND ORDER

The Commissioner of Social Security denied Theresa Ann Bartolomei's ("Bartolomei") application for supplemental security income benefits. Bartolomei seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). (DN 1). Both Bartolomei (DN 17) and the Commissioner (DN 22) have filed a Fact and Law Summary. Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 16).

## FINDINGS OF FACT

Theresa Bartolomei is 26-years old (Tr. 37), completed the eighth grade (Tr. 38), and lives with her six-year-old son, her mother, and her brother in Magnolia, Kentucky. (Tr. 45-46). Bartolomei has never performed substantial gainful employment and believes she cannot work

1

because of her paranoia about leaving the house, her anger problems, and pain in her neck and back. (Tr. 40). Bartolomei testified that her depression and lower back pain require that she frequently lie down during the day. (Tr. 48). When she is not lying down, Bartolomei tries to help her son read books and complete his homework, cooks dinner, and watches movies. (Tr. 49).

Bartolomei applied for supplemental security income benefits ("SSI") under Title XVI, claiming that she became disabled on March 12, 2012, (Tr. 127) as a result of neck and back pain from a car accident on March 12, 2012, migraines, and leg, ankle, and knee pain. (Tr. 145). Her application was denied initially and again on reconsideration. (Tr. 70, 88). Administrative Law Judge Michael Nichols ("ALJ Nichols") conducted a hearing in Louisville, Kentucky, on July 1, 2015. (Tr. 32-33). Bartolomei attended the hearing with her attorney. (*Id.*). Gail Franklin, an impartial vocational expert testified at the hearing. (*Id.*). ALJ Nichols issued an unfavorable decision on November 17, 2015. (Tr. 26).

ALJ Nichols applied the traditional five-step sequential analysis promulgated by the Commissioner, 20 C.F.R. § 404.1520, *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, Bartolomei has not engaged in substantial gainful activity since her application date, May 16, 2013. (Tr. 19). Second, Bartolomei has the severe impairments of "bipolar disorder versus mood disorder, generalized anxiety disorder, borderline intellectual functioning and headaches[.]" (*Id.*). Third, none of Bartolomei's impairments or combination of impairments meets or medically equals the severity of a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 20). Fourth, Bartolomei has the residual functional capacity ("RFC") to perform "a full range of work at all exertional levels" with the following nonexertional limitations:

> Seizure precautions should be observed. The claimant is limited to simple tasks. The claimant is limited to work that is not fast paced or quota driven. The claimant

> should not engage in work that requires interaction with the public. The claimant is limited to occasional interaction with coworkers and supervisors.

(Tr. 21). Additionally, Bartolomei has no past relevant work. (Tr. 25). Fifth and finally, considering Bartolomei's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform. (*Id.*).

Bartolomei appealed ALJ Nichols' decision. (Tr. 12). The Appeals Council declined review. (Tr. 1). At that point, the denial became the final decision of the Commissioner, and Bartolomei appealed to this Court. (DN 1).

CONCLUSIONS OF LAW

A. Standard of Review

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching her conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993).

B. Analysis

Bartolomei challenges ALJ Nichols' decision in four respects, which the Court will evaluate in turn.

1. The Post-Hearing Consultative Examination of Greg V. Lynch, Ph.D

Bartolomei first argues that ALJ Nichols failed to proffer the report of the Agency's examining expert, Greg V. Lynch, Ph.D. ("Dr. Lynch") before denying benefits based in part on his opinion. (DN 17-1, at pp. 3-8). According to Bartolomei, Dr. Lynch performed a consultative examination on August 31, 2015, subsequent to ALJ Nichols' hearing, and ALJ Nichols afforded Dr. Lynch's opinion "some weight" in his decision denying benefits. (*Id.*). Because ALJ Nichols did not produce Dr. Lynch's opinion to Bartolomei before using it to deny her benefits, Bartolomei alleges remand is necessary. (*Id.*). The Commissioner counters that ALJ Nichols informed both Bartolomei and her representative on September 23, 2015, that he had secured additional evidence that he sought to enter into the record and provided Bartolomei with directions on how to access the evidence in the Agency's system. (DN 22, at p. 10).

When an Administrative Law Judge considers evidence obtained post-hearing in making his disability determination, "the claimant must be given an opportunity to review the evidence, and, if desired, an opportunity to cross-examine the authors, or to rebut such a report." *Watkins v. Sec'y of Health & Human Servs.*, 1993 WL 393075, 7 F.3d 237 (table), at *1 (6th Cir. 1993) (citing *Wallace v. Bowen*, 869 F.2d 187, 190-92 (3d Cir. 1988) (additional citations omitted)). District courts within the Sixth Circuit have interpreted *Watkins* to hold that an Administrative Law Judge's undisputed failure to provide a claimant with a copy of post-hearing evidence constitutes a due process violation. *Bailey v. Colvin*, No. 14-104-DLB, 2015 WL 428103, at *4 (E.D. Ky. Jan. 31, 2015) (citing *Watkins*, 1993 WL 393075, at *1); *see also Medina v. Comm'r of Soc. Sec.*, No.

1:13CV-1183, 2014 WL 4748496, at *8-9 (N.D. Ohio Sept. 23, 2014); *Gaines v. Comm'r of Soc. Sec.*, No. 1:12-CV-276, 2013 WL 4494966, at *10 (E.D. Tenn. Aug. 20, 2013) (*Watkins* establishes that "the remedy for a violation of the Claimant's due process rights is reversal and remand.").

In this case, ALJ Nichols held an administrative hearing on July 1, 2015. Following the hearing, on August 31, 2015, Dr. Lynch performed a consultative examination of Bartolomei and completed a report. (Tr. 507). On September 23, 2015, ALJ Nichols mailed Bartolomei's representative a letter ("proffer letter") proposing that Dr. Lynch's consultative examination report be entered as evidence in the record. (Tr. 528). The proffer letter explained that Bartolomei could submit written comments concerning the evidence, submit written questions for the author of the evidence, or request a supplemental hearing on the new evidence. (*Id.*). Although the proffer letter was not part of the Administrative Record when Bartolomei filed her Fact and Law Summary, the Commissioner added the letter through a supplemental filing and explained that it was inadvertently omitted from the earlier certified record. (DN 18; DN 19).

This case is factually similar to the *Bailey* case cited above. In *Bailey*, the district court found the Administrative Law Judge did not fail to proffer a post-hearing report because the plaintiff did not produce evidence, such as "affidavits from SSA employees stating that the ALJ failed to send the proffer letter" or "follow up correspondence with the ALJ," and the plaintiff's attorney had extensive experience with the consultative examination process and should have known when to expect the consultative report. 2015 WL 428103, at *4. Likewise, Bartolomei presents no evidence to support her allegations, apart from the proffer letter's belated inclusion in the record and her own self-serving statements that the proffer letter was never received. It is clear that Bartolomei and her counsel were aware of the examination date in this case because

5

Bartolomei attended the consultative exam with Dr. Lynch on August 31, 2015.[1] It follows that Bartolomei's counsel could have inquired further to the agency if, in actuality, the proffer letter was not delivered.

Because Bartolomei does not produce undisputed evidence that neither she nor her counsel received the proffer letter from ALJ Nichols, the Court cannot conclude that ALJ Nichols failed to produce Dr. Lynch's report and declines to find Bartolomei's due process rights were violated.

### 2. Listing 12.05(C)

Bartolomei next argues ALJ Nichols erred at Step Three by failing to consider whether her intellectual disability met or equaled Listing 12.05(C) of the Agency's listed impairments. (DN 17-1, at pp. 8-9). At step three of the evaluation process, an Administrative Law Judge analyzes whether a claimant meets a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App'x 1. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citing 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii)). The listings streamline the disability decision-making process by identifying individuals whose impairments are more severe than the statutory disability standard, preventing performance of any gainful activity regardless of age, education, or work experience. *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S. Ct. 885, 107 L.Ed.2d 967 (1990) (citing 20 C.F.R. § 416.925(a)). The claimant bears the burden of proving that her impairment satisfies all of the specified medical criteria in a given listing. *Zebley*, 493 U.S. at 530; *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009); *Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 727-28 (6th Cir. 2004).

---

1 Dr. Lynch's report indicates that Bartolomei's mother brought her to the evaluation and that Bartolomei stated she had an attorney retained for the disability process. (Tr. 507).

The relevant question here is – when is an Administrative Law Judge required to discuss a particular listing? And, relatedly, when does an Administrative Law Judge commit error by not discussing a particular listing? Two recent unpublished decisions from the Sixth Circuit, *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641-42 (6th Cir. 2013) and *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014), address these questions.

In *Sheeks*, the Sixth Circuit reviewed an Administrative Law Judge's decision not to evaluate Listing 12.05(C), finding that "[i]n the normal course . . . an ALJ need not discuss listings that an applicant clearly does not meet, especially when the claimant does not raise the listing before the ALJ." 544 F. App'x at 641. But, where the record "'raise[s] a substantial question as to whether the [the claimant] could qualify as disabled' under a listing, the ALJ should discuss that listing" in his decision. *Id.* (quoting *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)). The court went on to explain that when a claimant asserts that an Administrative Law Judge erred by not considering a specific listing, the claimant must "do more than show that the ALJ's decision leaves open the question whether he meets [a listing.]" *Id*. Rather, the claimant must demonstrate "that the open question is a *substantial* one, that justifies remand." *Id.* (citing *Abbott*, 905 F.2d at 925).

The Sixth Circuit reiterated this "substantial question" approach in *Smith-Johnson*, explaining that where a claimant challenges an ALJ's decision to not discuss a listing, the claimant must point to "specific evidence that demonstrates he could reasonably meet or equal every requirement of the listing." 579 F. App'x at 432. "Absent such evidence, the ALJ does not commit reversible error by failing to evaluate a listing at Step Three." *Id.* Many district courts within the Sixth Circuit have followed the approach outlined in *Sheeks* and *Smith-Johnson* when presented with this same issue. *See Wein v. Comm'r of Soc. Sec.*, No. 16-cv-11816, 2017 WL 4211048, at

7

*8-9 (E.D. Mich. Aug. 7, 2017); *Willis v. Comm'r of Soc. Sec.*, No. 4:15CV-00089-HBB, 2016 WL 3033766, at *2-5 (W.D. Ky. May 26, 2016); *Gibson v. Colvin*, No. 5:15-CV-49-JMH, 2016 WL 707367, at *3-5 (E.D. Ky. Feb. 22, 2016); *Hobbs v. Comm'r of Soc. Sec.*, No. 1:13 CV 1411, 2014 WL 4545921, at *5-7 (N.D. Ohio, Sept. 12, 2014); *Clifton v. Colvin*, No. 1:13CV1895, 2014 WL 2946655, at *10-12 (N.D. Ohio July 1, 2014).

A number of courts have also recognized that an Administrative Law Judge, "without explicitly mentioning a particular listing, may nonetheless make findings sufficient to determine whether the listing is met." *McClellan v. Astrue*, 804 F. Supp. 2d 678, 693 (E.D. Tenn. 2011). The Sixth Circuit has indicated that a court may search the ALJ's entire decision to determine whether the appropriate medical listings were considered. *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006). But cases within the Sixth Circuit have distinguished that *Bledsoe* only applies when the Administrative Law Judge discusses evidence pertaining to all elements of the omitted listing. *See Snyder v. Comm'r of Soc. Sec.*, No. 5:13CV2360, 2014 WL 6687227, at *9 (N.D. Ohio Nov. 26, 2014); *Hunter v. Astrue*, No. 1:09CV2790, 2011 WL 6440762, at *3 (N.D. Ohio Dec. 20 2011) (finding *Bledsoe* was inapplicable where ALJ failed to evaluate medical evidence).

Most importantly, an Administrative Law Judge must actually evaluate the evidence, compare it to the requirements of the particular listing, and give an explained conclusion in order to facilitate meaningful judicial review. *Reynolds,* 424 F. App'x at 416; *see also Snyder*, 2014 WL 6687227, at *10. Without such analysis, "it is impossible to say that [an] ALJ's decision at Step Three was supported by substantial evidence." *Reynolds*, 424 F. App'x at 416 (citing *Clifton v. Chater*, 79 F. 3d 1007, 1009 (10th Cir. 1996) (additional citations omitted)).

In this case, ALJ Nichols found at step two that Bartolomei had the severe mental impairments of bipolar disorder versus mood disorder, generalized anxiety disorder, and

8

borderline intellectual functioning. (Tr. 19). ALJ Nichols then went on to Step Three to determine whether Bartolomei had an impairment or combination of impairments that met or medically equaled one of the listed impairments. He began with the conclusion that "the severity of [Bartolomei's] mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.02, 12.04, and 12.06." (Tr. 20). He then thoroughly evaluated whether Bartolomei could satisfy the "Paragraph B" requirements of the three aforementioned listings by assessing her "activities of daily living," "social functioning," "concentration persistence or pace," and "episodes of decompensation" and the "Paragraph C" requirements as well. (Tr. 20-21).

ALJ Nichols did not, however, mention Listing 12.05(C), which covers the mental disorder of "intellectual disability," in his Step Three analysis. Listing 12.05(C) has two parts. The first part, referred to as the "diagnostic definition," requires (1) significantly sub-average general intellectual functioning; (2) deficits in adaptive functioning; and (3) onset before age twenty-two. 20 C.F.R. Pt. 404, Subpt P App'x 1, §§ 12.00, 12.05(C). The second part, referred to as the "severity criteria" of subsection (C) requires (1) a valid verbal, performance, or full-scale IQ of 60 through 70; and (2) a physical or mental impairment imposing an additional and significant work-related limitation or function. *Id.*; *Smith*-Johnson, 579 F. App'x at 432.

ALJ Nichols' failure to evaluate Listing 12.05(C), according to Bartolomei, cannot be considered harmless because evidence in the record establishes all three requirements of the Listing. (DN 17-1, at pp. 8-9). Bartolomei also believes ALJ Nichols' error is not harmless because the Court should not be permitted to supply an ALJ's missing findings or make an independent determination as to whether she meets a particular listing. (*Id.* at p. 9). In opposition, the Commissioner asserts that Bartolomei fails to meet the first severity prong of Listing 12.05(C), a

9

valid verbal, performance, or full-scale IQ of 60 through 70, as outlined by ALJ Nichols in his RFC determination. (DN 22, at p. 13). Because Bartolomei cannot establish a valid IQ score, the Commissioner believes ALJ Nichols appropriately refrained from further evaluation of Listing 12.05(C). (*Id.* at pp. 12-13).

First, Bartolomei asserts that the record contains evidence that establishes the "severity criteria" of Listing 12.05(C). For subsection (C)(1), Bartolomei points to her WAIS-IV test results from Dr. Ollie Dennis in August of 2013, which included a full-scale IQ score of 63. (DN 17-1, at pp. 9-10). Bartolomei acknowledges that a later examination performed by Dr. Lynch in August of 2015 revealed a full-scale IQ score of 72 but emphasizes that when presented with multiple IQ scores in the record, the regulations require utilizing "the lowest valid IQ score" for purposes of Listing 12.05. (DN 17-1 at pp. 11-12 (citing 20 C.F.R. § Pt. 404 Subpt. P. App'x 1, A, 12.00(c)(6)(c)). The Commissioner, on the other hand, believes that ALJ Nichols properly discredited the full-scale IQ score of 63 from Dr. Dennis in his RFC determination and, therefore, this score cannot be considered "valid" for purposes of establishing subsection (C)(1).

The Commissioner is correct that ALJ Nichols discussed both Dr. Dennis's and Dr. Lynch's full-scale IQ scores in his residual functional capacity determination. He stated:

> The claimant underwent IQ testing at two different consultative exams (Exhibits 11F and 25F). At her first exam in August of 2013, the claimant earned a full-scale IQ score of 63 (Exhibit 11F). However, the examiner noted that she maintained a rather limited persistence and she resisted guessing, such that the results of the exam represented a low estimate of her functional ability (Exhibit 11F). The examiner noted that the generated profile on the MMPI-1 led the examiner to find the scores invalid due to a large number of unusual responses generated (Exhibit 11F). The examiner found that secondary gain should be ruled out (Exhibit 11F). At the consultative exam in August of 2015, her full scale IQ score was 72 (Exhibit 25F). The examiner considered this to be a valid estimate (Exhibit 25F).

The Court, however, finds ALJ Nichols' decision to discredit Dr. Dennis's full-scale IQ score of 63 is not supported by substantial evidence in the record. In discrediting Dr. Dennis's full-scale IQ score of 63, ALJ Nichols relied on two excerpts from Dr. Dennis's report. The first excerpt, from the "General Observations, Cognitive and Affective Status" section of his report, indicates that Bartolomei "maintained rather limited persistence and she resisted guessing such that the results of the examination represented a low estimate of her functional ability." (Tr. 314). The second excerpt ALJ Nichols relied on is Dr. Dennis's observation that "Mrs. Bartholomei's [sic] responses generated a profile on the MMPI-1 that was considered to have been invalid" due to "the large number of unusual responses generated[,]" which could reflect random responding, poor reading skills, faking bad responses for secondary gain, or blatant psychosis." (Tr. 317).

These selections from Dr. Dennis's report do not refer to the WAIS-IV testing or the IQ scores generated therefrom. In fact, in the section of his report discussing the WAIS-IV testing and IQ scores, Dr. Dennis does not mention any signs of malingering or questionable validity. Dr. Dennis, instead, discussed that the WAIS-IV test results indicated "no specific strengths" and "weakness . . . in the ability to find common elements in different items and concepts, recent auditory memory for digits in a series, visual information processing and abstract reasoning skills," among other things. (Tr. 315-16). Additionally, Dr. Dennis's conclusion that Bartolomei's MMPI-1 test results were invalid does not automatically establish that her WAIS-IV test results, including her full-scale IQ score of 63, were equally invalid.[2] Based on these considerations, the Court finds that despite ALJ Nichols' questioning of the validity of Bartolomei's full-scale IQ

---

2 The MMPI test and the WAIS-IV IQ test measure "different qualities and make different assessments." *Wedge v. Astrue*, 624 F. Supp. 2d 1127, 1131-32 (C.D. Cal. 2008) (citing *Gallant v. Heckler*, 753 F.2d 1450, 1458 (9th Cir. 1984); *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1092 (9th Cir. 1999)).

score of 63 in his RFC determination, Bartolomei has raised a substantial question as to whether she meets subsection (C)(1) of the severity criteria in Listing 12.05.

Along with the required IQ threshold, Bartolomei points to evidence indicating she suffers "a physical or mental impairment imposing an additional and significant work-related limitation or function" as required by section (C)(2) of the severity criteria. (DN 17, at p. 13). Bartolomei refers to ALJ Nichols' determination at Step Two that she suffers from numerous "severe impairments" in addition to borderline intellectual functioning. (Tr. 19). Because ALJ Nichols' decision acknowledges the existence of additional severe impairments –bipolar disorder versus mood disorder, generalized anxiety disorder . . . and headaches – Bartolomei has presented sufficient evidence to raise a substantial question of whether she meets subsection (C)(2). *See Lingenfelter v. Comm'r of Soc. Sec.*, No. 1:13-cv-00057, 2013 WL 5428731, at *6 (N.D. Ohio Sept. 26, 2013) (noting that the Social Security Administration's regulations indicate that "an impairment that is 'severe' necessarily constitutes a significant additional limitation.") (additional citations omitted); *see also* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00A.

Turning to the diagnostic criteria of Listing 12.05, the Court also finds that Bartolomei has raised a substantial question as to whether she has satisfied (1) significantly subaverage general intellectual functioning; (2) deficits in adaptive functioning; and (3) evidence that the condition began before age 22. First, evidence in the record indicates Bartolomei only completed between eight and nine years of school with average to below average grades, has not completed her GED, and has some trouble reading, writing, and spelling. (Tr. 37, 311, 507-508). The Court finds this evidence, combined with her full-scale IQ score of 63, is sufficient to raise a substantial question regarding whether Bartolomei has satisfied the requirement of significantly subaverage general intellectual functioning prior to age 22. *See Clifton*, 2014 WL 2946655, at *12.

Second, Bartolomei cites to evidence of her deficits in adaptive functioning by pointing to her history of academic and occupational deficits including dropping out of school in the 9th grade, the fact that she has never earned above the level of substantial gainful employment, and her reliance on her mother to help her with daily activities, like laundry, grocery shopping, and assisting her son with homework. (DN 17-1, at p. 15 (citing Tr. 37-38, 45-50, 136)). Bartolomei also relies on her test results from the Woodcock-Johnson Psycho-Educational Battery, where she scored in the 5th percentile for letter-word identification, 18th percentile in passage comprehension, .1 percentile in calculations, 2nd percentile in applied problems and 4th percentile in spelling, and from the Vineland Adaptive Behavior Scales-II, where she scored in the moderately low range in communication, daily living skills, and socialization skills. (*Id.* (citing Tr. 216, 217)). Lastly, Bartolomei references Dr. Dennis's findings that she "manifested adaptive skills that fell at the eighth percentile of the individuals at her age reflective of moderately low ability in communication independent functioning, and socialization skills." (*Id.* citing Tr. 317).

The adaptive skills prong generally evaluates a claimant's effectiveness in areas such as social skills, communication skills, and daily-living skills. *See Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x 672, 677 (6th Cir. 2009) (citing *Heller v. Doe*, 509 U.S. 312, 329, 113 S. Ct. 2637, 125 L.Ed.2d 257 (1993)). The Court finds that, while certainly not determinative of whether Bartolomei would, in fact, meet the adaptive functioning deficits requirement of Listing 12.05 prior to age 22, the above evidence cited by Bartolomei at least raises a substantial question as to this issue.

Because ALJ Nichols failed to mention Listing 12.05, much less implicitly analyze each requirement of the Listing otherwise in his decision, the Court finds a remand is necessary to allow the ALJ the opportunity to meaningfully consider this issue. In so finding, the Court emphasizes

that it is not expressing an opinion as to whether Bartolomei will ultimately be able to demonstrate that she meets or equals the Listing. Indeed, it is not the Court's place to be the first to weigh the evidence contained in the record and determine whether Bartolomei does or does not suffer from "intellectual disability" pursuant to Listing 12.05(C). *See Clifton v. Colvin*, No. 1:13CV1895, 2014 WL 2946655, at *13 (N.D. Ohio July 1, 2014).

### 3. ALJ Nichols' RFC Determination

Bartolomei also mounts numerous challenges to ALJ Nichols' RFC determination, including his evaluation of Dr. Dennis and Dr. Lynch's opinions, and whether the RFC is supported by substantial evidence. (DN 17-1, at p. 2). Because the Court has already determined that remand is necessary as to ALJ Nichols' failure to evaluate Listing 12.05(C), there is no need to proceed with adjudicating the remaining issues in Bartolomei's Fact and Law Summary.

### ORDER

For the foregoing reasons, the Court finds the decision of the Commissioner is not supported by substantial evidence. **IT IS THEREFORE ORDERED** that ALJ Nichols' decision is **VACATED** and the case is **REMANDED**, pursuant to 42 U.S.C. § 405(g) sentence four, for further proceedings consistent with the opinion. This is a final and appealable Order and there is no just cause for delay.

Copies:   Counsel